CARL T. HOFFER *vs.* COMMISSIONER OF CORRECTION &
another.[1]

Suffolk. March 3, 1992. - April 13, 1992.

Present: WILKINS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Imprisonment*, Enforcement of discipline. *Due Process of Law*, Prison clas-
sification proceedings. *Damages*, Civil rights. *Civil Rights*, Damages.

A prisoner confined for two and one-half years to a segregation unit, with-
out periodic review of his status pursuant to 103 Code Mass. Regs.
§ 421.08 (1978), suffered an actual injury for which compensation be-
yond nominal damages was warranted [454-456]; however, he was not
entitled to damages for loss of his liberty during the first ninety days of
such confinement, during which no status review was required [456-
457].

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 15, 1983.

The case was heard by *Julian T. Houston*, J., on a motion
for partial summary judgment.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Charles M. Wyzanski* for the Commissioner of Correction
& another.

*Daniel M. Lewis* for the plaintiff.

NOLAN, J. The defendants, Commissioner of Correction
(commissioner), and superintendent of Massachusetts Cor-
rectional Institution at Cedar Junction (MCI, Cedar Junc-
tion), appeal from the judgment of the Superior Court
awarding damages to the plaintiff, Carl T. Hoffer, for viola-
tion of his due process rights in connection with his commit-

---

[1]The superintendent of the Massachusetts Correctional Institution at
Cedar Junction.

ment to the departmental segregation unit (DSU) of MCI, Cedar Junction. We transferred the case to this court on our own motion. We affirm the judgment, as modified in this opinion.

We state the facts relevant to this appeal. From February 12, 1975, until June 9, 1981, the plaintiff was incarcerated at MCI, Cedar Junction and housed with the general population.[2] During this period, the plaintiff participated in prison programs, learned the leather trade, and worked in the prison plate factory. As a result of his participation in the prison programs, the plaintiff received a four and one-half days' "good time" credit toward his sentences each month. The plaintiff earned approximately $120 per month for his work in the factory and acquired $2,000 worth of tools and supplies for making leather goods. Family members and friends visited the plaintiff about four times each month. As a member of the general population, the plaintiff was allowed to be out of his cell approximately sixteen hours per day.

On June 9, 1981, the defendants placed the plaintiff in the DSU, after the disciplinary board determined that the plaintiff's over-all pattern of behavior indicated an inability to function in the more open levels of security. As a segregated prisoner, the plaintiff no longer was entitled to work or participate in prison programs; hence, he lost the opportunity to earn income and "good time" credits. The plaintiff spent twenty-three and one-half hours a day in isolation and was allowed to leave his cell for only three one-hour periods of

---

[2]On February 12, 1975, the plaintiff was convicted in Massachusetts of armed robbery while masked and sentenced to serve from fifteen to sixteen years at MCI, Cedar Junction. On September 27, 1976, the plaintiff was convicted of attempted murder in the third degree, robbery, and aggravated assault in Pinellas County, Florida, for which he received a life sentence and two five-year sentences, respectively. On March 28, 1977, the plaintiff was convicted of murder in the first degree in Massachusetts and sentenced to life in prison, to be served from and after the expiration of the previously imposed sentences.

In 1984, the plaintiff was transferred from MCI, Cedar Junction, to the Federal prison at Martin Correctional Institute in Indiantown, Florida, where he currently resides.

exercise and two ten-minute periods for showering each week. The plaintiff's visits from family and friends were restricted to less than one visit a month.

In 1983, the plaintiff commenced an action against the defendants, alleging, inter alia, that the defendants were violating his rights to State and Federal due process by retaining him in the DSU without setting a conditional release date or conditions of behavior as required by 103 Code Mass. Regs. § 421.08 (1978).[3] The plaintiff sought declaratory and injunctive relief, as well as damages under 42 U.S.C. § 1983 (1988). The defendants denied liability, arguing that the plaintiff did not have a protected liberty interest in having a date set for his release from the DSU.

Subsequently, the plaintiff moved for partial summary judgment on the issue of liability. On April 4, 1988, a judge of the Superior Court ruled in favor of the plaintiff, holding

---

[3]Title 103 Code Mass. Regs. § 421.08, entitled Review of Departmental Segregation Status, states:

"(1) A department review board and the commissioner shall review the status of the resident transferred to a departmental segregation unit ninety days after transfer to such unit and at ninety day intervals thereafter. The procedures set forth in 103 CMR 420.13(2) shall be followed when undertaking all such reviews.

"(2) Upon completion of the initial ninety day review of a resident by a department review board pursuant to 103 CMR 421.08 (1), the board, where it does not recommend the release of the resident, shall recommend to the commissioner a date on which the resident shall begin to be released from the department segregation unit if conditions recommended by the department review board are fulfilled by the resident. Such conditions may include, for example, the absence of disciplinary reports and regular attendance at counseling sessions. The commissioner shall approve the recommended date, and any conditions, or set a date with conditions of his own with his reasons for not approving the recommendations of the department review board. If the conditions set by the commissioner have been fulfilled by the resident on the date approved or set by the commissioner under this section, the board shall recommend to the commissioner that the resident be released from the departmental segregation unit and transferred to the general population of the state correctional facility in which the unit is located, transferred to another state correctional facility, or establish and recommend to the commissioner a program for the gradual release of the resident from the unit. The commissioner shall approve such recommendations or make his own decisions as to the manner in which the resident shall be released from the unit."

that the defendants' failure to comply with the procedural regulations regarding DSU classifications deprived the plaintiff of his due process rights as a matter of law.

On July 12, 1990, a different Superior Court judge held a hearing to assess damages against the defendants for the violation of the plaintiff's constitutional rights. The judge found that, as a result of the plaintiff's illegal confinement in DSU from June 9, 1981, to February 23, 1984, the plaintiff suffered damages in the amount of $110,600. In arriving at this figure, the judge multiplied the number of days the plaintiff spent illegally confined in the DSU by a per diem assessment of $100. See *Blake* v. *Commissioner of Correction*, 403 Mass. 764, 770 (1989). The judge added to that total $9,900, a figure representing a $100 assessment for each social visit lost by the plaintiff over the course of his isolation.[4] *Id.* Finally, the judge awarded $2,000 for the plaintiff's lost property and ordered that the plaintiff receive 148 days of good time credit, based upon four and one-half days credit a month for thirty-three months. *Id.* This appeal followed and it is limited to the issue of damages.[5]

The defendants argue that the judge erred in awarding the plaintiff more than nominal damages, because, even if the defendants had complied with the DSU classification regulations, the plaintiff nevertheless would have been confined in the DSU for the period served, due to his poor conduct. For this reason the defendants assert that the plaintiff's claimed injuries cannot reasonably be attributed to the deprivation of due process and an award of compensatory damages is, therefore, improper. The defendants further argue that, assuming the judge properly determined that the plaintiff is entitled to compensatory damages, then such damages should not be calculated to include the first ninety days of the plaintiff's commitment to DSU, since the regulations do not re-

---

[4]The judge concluded that the plaintiff lost three visits a month for thirty-three months, equalling ninety-nine lost visits.

[5]The defendants did not appeal from the decision awarding partial summary judgment as to liability to the plaintiff.

quire the commissioner or the superintendent to set a release date or establish conditions of behavior until the expiration of ninety days following the initial DSU commitment. 103 Code Mass. Regs. § 421.08 (1) (1978).

The plaintiff responds that the judge correctly calculated the damages in this case. The plaintiff states that the judge specifically found that a causal connection existed between the due process violation and the plaintiff's losses. Moreover, the plaintiff argues that the defendants failed to demonstrate that the plaintiff would have been confined for two and one-half years in the DSU if the appropriate procedures had been followed, so the award of damages is proper. The plaintiff further contends that the defendants are not entitled to a reduction in the amount of the award, since the defendants failed to argue the issue in the lower court.

We conclude that the Superior Court judge correctly determined that, as a result of the deprivation of due process, the plaintiff suffered actual injury for which compensation beyond nominal damages is warranted. We further hold, however, that the defendants are entitled to a $9,900 reduction in the amount of the award, since the plaintiff properly was without a conditional release date and conditions of behavior for the first ninety days of his commitment to the DSU.

1. *Proof of actual damage.* The defendants argue that the award of damages should be vacated because the judge failed to determine whether the hardships experienced by the plaintiff while he was confined in the DSU were attributable to the defendants' failure to afford the plaintiff due process. The defendants contend that the plaintiff would have been committed to the DSU for two and one-half years, even if proper procedure had been followed, so a finding of compensatory damages is clearly erroneous. The defendants maintain that the plaintiff is entitled to no more than nominal damages under 42 U.S.C. § 1983 for the denial of due process. We do not agree.

Contrary to the defendants' assertion, the judge specifically found that the "unjustified hardships" suffered by the

plaintiff were the "natural and probable consequences of his illegal confinement in the DSU at MCI - Cedar Junction." The judge correctly ruled that the plaintiff is entitled to receive compensation, beyond nominal damages, for the loss of liberties which resulted from the deprivation of due process. *Blake, supra* at 770. The judge described in detail the conditions of the plaintiff's confinement as a member of the general population and as a segregated resident. The judge found that, as a result of the illegal confinement in the DSU, the plaintiff was denied visits from family and friends, lost employment opportunities, missed out on occasions to earn good time credits, and lost the tools and supplies he acquired for making leather goods. Based on these findings, the judge was warranted in concluding that the defendants' failure to follow the procedures for reviewing the status of segregated residents "had compensable injurious consequences to the plaintiff." *Id.*

Title 103 Code Mass. Regs. § 421.08 (1) and (2) delineates the procedures to be followed by prison officials when reviewing the DSU status of prison residents. The regulations require the commissioner and the department review board to establish, at the end of the initial ninety-day period of confinement, the conditions which the resident must fulfil in order to be eligible for release from the DSU, as well as the date on which the prisoner shall be recommended for release, if such conditions are met. See note 3, *supra.* These procedural protections reflect the understanding that commitment of a resident to a segregated unit results in a significant reduction of that resident's liberties. The regulations are stated in strict terms and serve to ensure that residents will not be unnecessarily or arbitrarily retained in the DSU.[6]

---

[6]Title 103 Code Mass. Regs. § 421.07 (1) and (2) makes clear the fact that a prison resident is not to be transferred to a segregated unit as punishment for committing an offense. The essential purpose of placing a resident in a segregated unit is to prevent that resident from injuring others, damaging property or interrupting the safe operation of the correctional facility.

A resident who is not provided with a conditional release date and conditions by which to guide his behavior is possibly subjected to arbitrary treatment. Without the benefit of knowing what is expected of him while segregated, the resident is denied the opportunity to work toward improving his situation. Moreover, the absence of a conditional release date denies the resident a meaningful incentive to modify his behavior and conform to prison regulations. Most importantly, however, the absence of these procedural safeguards allows the officials to continue a resident's placement in a segregated unit without proper regard for the resident's compliance with the demands placed on him while segregated.

The commissioner's failure to set a conditional release date and conditions of behavior in this case prevents any meaningful discussion of the defendants' argument that the plaintiff would have been committed to the DSU for two and one-half years, regardless of the constitutional violation. The defendants cannot reasonably assert that, in any circumstances, they would have exercised their discretion to keep the plaintiff housed in segregation for over two and one-half years. Without more, the argument ignores the fact that the defendants were obligated to conduct meaningful segregation status reviews. See note 3, *supra.* The judge properly concluded that the plaintiff was entitled to compensatory damages in this case.

2. *Reduction of damages.* The defendants assert that, pursuant to 103 Code Mass. Regs. § 421.08 (1), the commissioner was not required to set a conditional release date or establish conditions of plaintiff's behavior until the expiration of ninety days from the date of the plaintiff's commitment to DSU. On this basis, the defendants challenge the amount of damages awarded to the plaintiff, arguing that the judge erred in awarding damages to the plaintiff for the entire period of time he was confined in the DSU. The plaintiff urges that the defendants are not entitled to a reduction in the award because they failed to raise this issue at the hearing. We conclude that the defendants have the better of the argument on this issue.

"Where injustice might otherwise result, an appellate court properly may consider questions of law which were neither argued nor passed upon in a court or agency below." *McLeod's Case*, 389 Mass. 431, 434 (1983), citing *Hormel v. Helvering*, 312 U.S. 552, 557 (1941). The determination of the period for which the plaintiff is entitled to recover damages is a pure question of law, which we consider on appeal to prevent an unjust result in this case. *Id.*

The defendants cannot properly be held liable for the loss of liberty experienced by the plaintiff during the first ninety days of his commitment to the DSU. As the defendants correctly point out, the plaintiff had no right to a review of his status prior to expiration of the ninety-day period. 103 Code Mass. Regs. § 421.08 (1) and (2). For this reason, we hold that the judge erred in awarding damages to the plaintiff for the first ninety days of his commitment to the DSU and order that the damages be reduced accordingly. As so modified, the judgment is affirmed.

*So ordered.*