USCA1 Opinion

 

 October 6, 1994 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________ No. 94-1281 GLEN M. SULLIVAN, Plaintiff, Appellant, v. PETER PEPE, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Cyr and Boudin, Circuit Judges. ______________ ____________________ Glen M. Sullivan on brief pro se. ________________ Nancy Ankers White, Special Assistant Attorney General, and __________________ Michael H. Cohen, Counsel, Department of Correction, on brief for ________________ appellee. ____________________ ____________________ Per Curiam. Pro se prisoner Glen Sullivan appeals __________ __ a district court order which granted the defendant prison officials summary judgment in this civil action that Sullivan filed under 42 U.S.C. 1983. Sullivan's verified complaint sought declaratory and injunctive relief and damages as a result of Sullivan's confinement in administrative segregation pending a disciplinary investigation and subsequent disciplinary conviction for participating with other inmates in the fraudulent use of a credit card to buy running shoes. As a result of the disciplinary conviction, Sullivan was required to forfeit sixty (60) days of good time credits. We affirm the judgment for the defendants with one modification. I. The complaint named the following defendants in their individual capacities: Peter Pepe, Superintendent of the Massachusetts Correctional Institution (M.C.I.) at Norfolk, Larry Dubois, the Massachusetts Commissioner of Corrections, David Malone, the disciplinary hearing officer who presided at Sullivan's disciplinary hearing, and Sergeant Stephen Gatewood, the investigating officer at M.C.I. Norfolk. The complaint alleged that the defendants deprived Sullivan of his good time credits without due process by "establishing guilt without evidence" and "allow[ing] perjured testimony into the record and bas[ing the finding of] guilt on that -2- testimony." Sullivan asked the court to issue a declaratory judgment to that effect and to expunge his institutional record of the incident and reinstate his good time credits. Sullivan also sought compensatory damages in the amount of $1000 against each defendant for each day that he spent in segregation and $10,000 in punitive damages from each defendant.1 Before the defendants were served, the district court reviewed Sullivan's complaint in connection with his motion to proceed in forma pauperis (IFP) under 28 U.S.C. 1915(a). __ _____ ________ On October 8, 1993, the court issued a memorandum and order which allowed that motion. However, the court noted that Sullivan's claim for the restoration of his good time credits could only be raised by a habeas corpus petition under Preiser v. Rodriguez, 411 U.S. 475 (1973). The court allowed _______ _________ Sullivan's remaining claims against the defendants to proceed, noting that its ruling did not determine whether the complaint was otherwise sufficient to state a claim upon which relief could be granted. Thereafter, the defendants were served with Sullivan's complaint.2 ____________________ 1. Although the complaint is somewhat ambiguous, Sullivan's subsequent filings indicate that his damages claim is based solely on his confinement in administrative segregation. 2. However, the record suggests that the defendants did not receive the court's October 8, 1993 order. -3- 3 The defendants filed a motion to dismiss or, in the alternative, for summary judgment. The motion was supported by affidavits from defendants Malone and Gatewood and numerous documents from the disciplinary proceeding, including copies of the disciplinary report that charged Sullivan with various offenses and the disciplinary hearing record, which reported officer Malone's description of the evidence and of the reasons that he found Sullivan guilty.3 Sullivan filed an opposition to the defendants' motion. The parties' respective filings and Sullivan's verified complaint indicate that the following facts are undisputed. Sullivan is serving a 12-20 year sentence for armed assault. Before the disciplinary incident in issue, he had accumulated over 280 good time credits and suffered no forfeitures. On June 9, 1993, Sullivan was removed from the general population at M.C.I. Norfolk, a medium security prison, and placed in the institution's Receiving Building. He was told that he was being placed on pending investigation status due to claims concerning the fraudulent use of a credit card. On the following day, Sullivan was interviewed by Sgt. Gatewood. Gatewood told Sullivan that someone had ____________________ 3. The defendants also submitted Sullivan's form request for witnesses, which identified inmate Steven Santo as the sole witness Sullivan wished to call in his defense, Sullivan's letter appealing Malone's disciplinary finding to Superintendent Pepe, a form recording that that appeal had been denied, and a record of Sullivan's forfeiture of the good time credits. -4- 4 placed an order for two pairs of sneakers in Sullivan's name with East Bay Running Store, Inc. (East Bay), a Wisconsin company. The order that Sgt. Gatewood referred to was fraudulently made with a third party's credit card number. Sullivan denied knowledge of any credit card or purchase from East Bay in his name. On June 22, 1993, Sullivan received a disciplinary report which alleged that the aforementioned order was placed with East Bay in Sullivan's name and M.C.I. Norfolk address.4 The disciplinary report charged Sullivan with ____________________ 4. The disciplinary report was prepared by Sgt. Gatewood and contained the following allegations: On 6-7-93, an investigation was initiated into the fraudulent use of credit cards by inmates housed at MCI-Norfolk. Through investigative techniques and the interview process the following facts have been established. On 5-27-93, an order was placed at East Bay Running Store, Inc., 427 Third Street, Wausau, Wisconsin, for a pair of Reebok Shaq Attack sneakers and one pair of Nike Pantheon sneakers. This attempted purchase was fraudulently done by using an innocent civilian's credit card number. This order was scheduled to be shipped to Glenn (sic) Sullivan, Two Clark Street, P.O. Box 43, Norfolk, MA. East Bay Running Store was alerted to this credit card fraud and this order was cancelled. On 6-9-93, inmate Glen Sullivan was placed in the Receiving Building Pending Investigation. Inmate Sullivan was advised of his Miranda rights at this time. On 6-22-93, this investigation was concluded. Inmate Sullivan's status was changed from R.B./P.I. to R.B./AA. -5- 5 multiple offenses, including stealing.5 Sullivan also received a Request for Representation and/or Witnesses form which he used to request that inmate Steven Santo be called as a witness at Sullivan's disciplinary hearing. Santo was also under investigation for fraudulently using the credit card, as were several other inmates. A disciplinary hearing was convened on July 9, 1993 at which defendant Malone presided. The disciplinary report was read and Sullivan denied the charges. Although it appears that inmate Santo was not called as a witness, officer Malone received an unsworn statement from him which was admitted into evidence.6 Thereafter, the hearing was adjourned until ____________________ 5. The disciplinary report specifically charged Sullivan with the following offenses under 103 C.M.R. 430.24 (1992): (2) Violating any departmental rule or regulation, or any other rule, regulation, or condition of an institution or community based program[,] (8) Conduct which disrupts or interferes with the security or orderly running of the institution. (23) Unauthorized possession of property belonging to another person. (24) Possession of anything, including money or currency, not authorized for retention of receipt by the inmate. (26) Stealing. (32) Violating any law of the Commonwealth of Massachusetts or United States[, and] (33) Attempting to commit any of the above offenses, aiding another person to commit any of the above offenses, and making plans to commit any of the above offenses shall be considered the same as commission of the offense itself. 6. Santo's statement said, "I, Steven Santo, testify that Glen Sullivan had no knowledge of any purchase from East Bay Co. being shipped to him at M.C.I. Norfolk. The order was -6- 6 the following Monday, July 12th. On that day Sergeant Gatewood testified that the disciplinary report was accurate, that an order for two pairs of sneakers was scheduled to be sent to Sullivan and that informant information showed that Sullivan was aware that the package of sneakers was coming to him. However, Gatewood did not know who had placed the actual order and he acknowledged that Sullivan did not receive anything as a result of the order. Officer Malone's affidavit indicates that Sullivan complained that he had been unaware that informant information was going to be used. Malone then excused Sullivan from the hearing room and Gatewood supplied Malone with the informant information in executive session. Malone completed an informant information checklist which indicated that the disclosure of the informant evidence would be hazardous to the informant and institutional security. Based on information provided by Gatewood, Malone's checklist also found that the informant was reliable because he had been used on five previous occasions, that the informant's information was credible, and that no favors had been sought ____________________ for another inmate purpose." Apart from officer Malone's averment that several inmates had disciplinary hearings related to the fraudulent purchases on July 9th, the record does not explain why Santo was not allowed to testify at Sullivan's hearing. -7- 7 by, or promises made to, the informant in exchange for the information.7 The disciplinary hearing then resumed and Malone told Sullivan that the informant information indicated that Sullivan had been aware both that an order had been placed using his name and return address and that a fraudulently obtained credit card number had been used. Sullivan then indicated that he had given another inmate permission to have a package sent to Sullivan because that inmate had already received a package within the last 30 days.8 As a result of the disciplinary hearing, officer Malone found Sullivan guilty of conduct which disrupts or interferes with the security or orderly running of the institution in violation of 103 C.M.R. 430.24(8) and of attempting to commit or aiding another to commit stealing in violation of 103 C.M.R. 430.24(33), (26). Malone based his finding on Gatewood's disciplinary report and testimony, the informant information, and Sullivan's inconsistent statements at the ____________________ 7. The informant information checklist is not before us, although Massachusetts regulations require that it be made part of the record of the disciplinary proceedings. See 103 ___ C.M.R. 430.15(1)(1992)(hearing officer's finding that the informant is reliable and the information is credible shall be included in the record). 8. Thus, while Sullivan initially denied knowledge that a package was coming to him, he later admitted that he had given another inmate permission to have a package sent to Sullivan for the other inmate. However, Sullivan apparently continued to deny knowledge that the package would have contained sneakers procured through fraud. -8- 8 disciplinary hearing. While Malone acknowledged that the goods did not actually reach Sullivan, he determined that a guilty finding was warranted because Sullivan had attempted to fraudulently obtain the shoes.9 Malone recommended that Sullivan be sanctioned with the loss of sixty (60) days of good time credits and a custody status review. Sullivan appealed Malone's finding to Superintendent Pepe, maintaining that he had no knowledge of the fraudulent purchase. Superintendent Pepe denied Sullivan's appeal and Commissioner Dubois thereafter ordered Sullivan to forfeit sixty days of good time credits.10 Based on the foregoing facts, the defendants made four arguments in support of their motion for dismissal/summary judgment. They first asserted that the complaint failed to state an actionable claim because Sullivan only challenged the sufficiency of the evidence at his disciplinary hearing and the record established that the evidence supporting Sullivan's conviction was obviously sufficient under Hill v. ____ Superintendent of Mass. Correctional Institution at Walpole, ____________________________________________________________ 472 U.S. 445, 455-57 (1984)(requiring that there be only ____________________ 9. Malone also found that Santo's statement was not credible because Santo also was involved in the investigation and it was possible that there had been collaboration on an alibi. Moreover, Santo did not indicate how he knew that Sullivan was not involved. 10. Sullivan also contends that he has been reclassified to M.C.I. Cedar Junction, a maximum security prison, as a result of the disciplinary finding. -9- 9 "some evidence" of an inmate's guilt to sustain a prison disciplinary conviction).11 The defendants argued that there was ample evidence to support Sullivan's conviction because (a) it was undisputed that an order had been placed using a fraudulently obtained credit card number and Sullivan's name and return address, (b) the only issue was whether Sullivan knew of the purchase order and its fraudulent nature, (c) informant information substantiated that Sullivan was one of the inmates who had participated in the fraudulent use of the credit card number, and (d) Sullivan's denial of the charges was properly discounted since he had given inconsistent statements concerning the state of his knowledge before and after Gatewood testified. The defendants also argued that Sullivan failed to state the basis for his claim that "perjured testimony" had been used against him. They contended that if that claim was based on the informant's information, the claim was not actionable because Wolff v. _____ McDonnell, 418 U.S. 539, 565 (1974), recognized that _________ informant information may properly be used to obtain prison ____________________ 11. In Hill the Supreme Court upheld an inmate's ____ disciplinary conviction for assaulting another inmate based on a corrections officer's testimony that he saw the plaintiff/inmate with two other inmates jogging away from the bruised victim. The victim denied that he had been assaulted by the plaintiff and there was no direct evidence that any one of the three fleeing inmates had been the victim's assailant. Nevertheless, the Supreme Court held that the evidence against the plaintiff was sufficient although arguably "meager." See 472 U.S. at 456-57. ___ -10- 10 disciplinary convictions.12 The defendants further argued that Sullivan's complaint did not allege any procedural improprieties in the admission of the informant's information under 103 C.M.R. 430.15(1)-(4)(1992).13 Noting that summary judgment was appropriate to the extent that matters outside the pleadings were considered, the defendants also ____________________ 12. While the cited page in Wolff did not expressly address _____ informant information, the Court acknowledged that when personal or institutional safety was implicated, prison officials could exclude evidence from their statement of reasons for taking disciplinary action so long as the statement indicated the fact of the omission. One court has observed that Wolff "foreshadowed" the problem of informant _____ information by indirectly suggesting that evidence might be excluded from the statement of reasons to protect informants from retaliation. See Hensley v. Wilson, 850 F.2d 269, 273 ___ _______ ______ (6th Cir. 1987). 13. 103 C.M.R. 430.15 (1992) sets forth the Procedures for the Use of Informant Information. In general, it provides that a hearing officer may consider evidence that is not presented in the inmate's presence only if the officer makes a finding that the informant is reliable and his information is credible and that finding is included in the record. The finding should furthermore contain the facts upon which the hearing officer based his conclusion and a statement of the informant's information that (a) is as specific as possible without creating a substantial risk of disclosing the informant's identity, and, (b) demonstrates that the informant had personal knowledge of the information he provided. The hearing officer must also find that disclosure of the information would create a substantial risk of harm and must further present a summary of the information to the inmate at the hearing unless disclosure in any greater detail than that contained in the disciplinary report would create a substantial risk of disclosing the informant's identity. The regulation is reproduced in the appendix to this opinion. As noted above at n.7, the record does not contain the informant information checklist that this regulation requires. We note that the record also does not include a specific description of the informant information nor any indication that the informant had personal knowledge of the information he provided. -11- 11 argued that they were entitled to summary judgment on grounds of qualified immunity because they acted with the objective good faith belief that their actions were proper, and that the court should decline pendent jurisdiction over any state law claims that might be read into the complaint (which invoked both federal and pendent jurisdiction) since there was no basis for Sullivan's federal cause of action. Sullivan's opposition to the defendants' motion was supported by an affidavit from inmate Santo and a photocopy of a December, 1993 letter that Sullivan had written to East Bay in an apparent effort to gather documents in support of his defense.14 While Sullivan's rambling prose is difficult to comprehend, he maintained that his complaint stated a claim for the reinstatement of his good time credits, the expungement of the disciplinary report, and compensation for each day that he spent in segregation. Sullivan alleged that he had produced an affidavit and witness list that the defendants denied him, but he does not identify what witnesses, apart from Santo, he wanted to call, nor what evidence would have been elicited from them.15 ____________________ 14. Sullivan asked East Bay for copies of its records of the fraudulent orders and Sullivan's own cash transactions with East Bay. Sullivan's opposition asserted that he had obtained documentation that would clear him of the disciplinary charges. 15. The affidavit from inmate Santo that Sullivan submitted indicated that Santo had ordered items with the credit card and that Sullivan had no knowledge or involvement in the -12- 12 Sullivan also alleged that the defendants violated his state and federal rights by placing him in the Receiving Building on awaiting action status without due process. However, he alleged no facts to support this claim, but only made conclusory assertions that his confinement in administrative segregation constituted cruel and unusual punishment, denied him the same privileges as the general population, and violated Massachusetts policies and regulations.16 On March 4, 1994, the district court endorsed the defendants' motion with an order indicating that it had treated the motion as one for summary judgment and allowed it for all the reasons set forth in the defendants' memorandum. Sullivan appeals this ruling. II. On appeal, Sullivan stresses that while his complaint sought declaratory and injunctive relief and compensation for his confinement in administrative segregation, his main concern is for the restoration of his good time credits. ____________________ fraudulent scheme. 16. The only factual allegations in Sullivan's opposition related to the disciplinary investigation. Sullivan alleged that in contrast to the disciplinary report, which suggested that the defendant prison officials had uncovered the fraud and contacted East Bay, East Bay had contacted the defendants to warn them that several orders had been fraudulently placed on the same credit card number on behalf of different individuals who had the same address of delivery (i.e., M.C.I. Norfolk). East Bay cancelled the orders and furnished the defendants with a list of names that had been used in the attempted fraud. -13- 13 Sullivan reiterates his contention that he was denied due process in his disciplinary proceedings because his guilt was established "without evidence" through informant information and Gatewood's perjured testimony and because he was not able to call witnesses or obtain affidavits or discovery.17 Sullivan also maintains that this court must review the dismissal of his claim that he was illegally confined in administrative segregation. He says that this confinement hampered the preparation of his defense, but he does not explain how.18 Sullivan's complaint sought relief for two distinct events: his confinement in administrative segregation before his disciplinary conviction, for which Sullivan sought damages, and the disciplinary proceeding that resulted in the forfeiture of his good time credits, for ____________________ 17. Sullivan also raises several specious arguments. For example, he contends that we must review the judgment for the defendants under the standard imposed by Neitzke v. Williams, _______ ________ 490 U.S. 319 (1989), because the district court acted spontaneously. But it is clear that the district court did not render judgment for the defendants spontaneously but only in response to the defendants' motion, thus Neitzke does not _______ apply. Sullivan also says that because he received a district court scheduling order before he received notice that the court had allowed the defendants' motion for summary judgment he was misled to believe that he would have an opportunity to amend his complaint and pursue discovery. But as Sullivan had filed his opposition to the defendants' motion before the scheduling order issued, Sullivan's misperception did not result in any prejudice. 18. The defendants' motion for dismissal/summary judgment did not address Sullivan's segregation claim. The defendants now contend that we should deem this claim waived because Sullivan did not plead it sufficiently below. -14- 14 which Sullivan sought an order expunging his disciplinary conviction and compelling the restoration of his good time credits. While Sullivan's damages claim was cognizable under 42 U.S.C. 1983 as an attack on his conditions of confinement, Preiser v. Rodriguez, 411 U.S. at 499 & n.14 _______ _________ (1973), the district court correctly observed that Sullivan's claim for the restoration of his good time credits was not cognizable under 42 U.S.C. 1983. Rather, Preiser v. _______ Rodriguez, 411 U.S. at 482-500, established that habeas _________ corpus, with its attendant requirement of exhaustion of state remedies, is the sole remedy for state prisoners challenging the actual duration of their confinement on the ground that they have been unconstitutionally deprived of good time credits. This distinction appears to have gone unnoticed when the district court summarily allowed defendants' motion for summary judgment. As concerns Sullivan's damages claim based on his confinement in administrative segregation, Sullivan merely cites to cases relating to other challenges to inmate confinement in administrative and disciplinary segregation, see, e.g., LeMaire v. Maass, 745 F. Supp. 623 (D. Or. 1990) ___ ____ _______ _____ (holding conditions in disciplinary segregation unit, e.g., ____ cell restraints, constituted cruel and unusual punishment); Hoffer v. Commissioner of Correction, 412 Mass. 450 ______ ____________________________ (1992)(upholding judgment that correction officials' failure -15- 15 to set conditional release date or conditions of behavior to enable inmate to secure release from departmental segregation unit violated due process); Royce v. Commissioner of _____ ________________ Correction, 390 Mass. 425 (1983) (confinement in awaiting __________ action status may not be used as a pretext for punishment), without alleging facts suggesting that defendants subjected Sullivan to similar conditions. Nor has Sullivan alleged any facts to suggest that his confinement in the Receiving Building on awaiting action status violated Massachusetts regulations.19 Thus, we affirm the judgment for the defendants insofar as it pertains to Sullivan's claim for damages based on his confinement in administrative segregation. Sullivan's due process challenge to his disciplinary conviction and loss of good time credits requires further analysis, however. The fact that a prisoner-plaintiff may not have exhausted state remedies does not preclude dismissal of a habeas petition which is obviously meritless, particularly where the government has not raised non- exhaustion as a defense. See, e.g., Granberry v. Greer, 481 ___ ____ _________ _____ ____________________ 19. The defendants correctly point out that 103 C.M.R. 430.21(1)(1992) authorizes prison officials to place "an inmate who is under investigation for a possible disciplinary offense or [who] has been charged with or found guilty of a disciplinary offense" on awaiting action status "subject to any applicable review requirements[.]" Sullivan has not alleged any facts to suggest that any review or other regulatory requirements were violated by his administrative segregation. -16- 16 U.S. 129, 135 n.7 (1987)("it is appropriate for the court of appeals to dispose of nonmeritorious petitions without reaching the nonexhaustion issue"); Love v. Butler, 952 F.2d ____ ______ 10, 15 (1st Cir. 1991)(same). But we are not satisfied, at this point, that Sullivan's due process claim can be considered obviously meritless. The informant's information was the only evidence that showed Sullivan's knowledge of the fraudulent purchases and Sullivan is attacking the use of the informant information to prove his culpability in the scheme. The Massachusetts regulations governing the use of informant information were promulgated after the Massachusetts Supreme Judicial Court determined that due process required certain safeguards when informant information is used. See, e.g., ___ ____ Nelson v. Commissioner of Correction, 456 N.E. 2d 1100, 390 ______ ___________________________ Mass. 379 (1983); Lamoreux v. Superintendent, Massachusetts ________ _____________________________ Correctional Institution, Walpole, 456 N.E.2d 1117, 390 Mass. _________________________________ 409 (1983). Where the informant information checklist is not in the record, and the record neither indicates what the informant's information was nor whether the informant had personal knowledge of the information he provided, we cannot say that the "some evidence" test of Hill has been satisfied ____ with respect to the issue of knowledge of fraudulent purchases. In these circumstances, we believe Sullivan should be permitted to exhaust his state court remedies in connection with the due process claim. -17- 17 Accordingly, the judgment entered for defendants on the damages claim for confinement in administrative segregation is affirmed. The judgment entered for defendants on the due ________ process claim for restoration of good time credits shall be modified to reflect that this claim is dismissed pursuant to ________ Preiser v. Rodriguez, 411 U.S. 475, 482-500 (1973), subject _______ _________ to exhaustion of state remedies. -18- 18 APPENDIX ________ 103 C.M.R. 430.15: Procedures for the Use of Informant _____________________________________________________________ Information ___________ In disciplinary cases involving informant information, the hearing officer may consider documentary evidence and/or testimony which is not presented in the presence of the inmate or his representative only if, after viewing and/or hearing such documentary evidence or testimony, the hearing officer has: (1) Made a finding that the informant is reliable and that the information is credible. This finding shall be included in the record and should contain the following information: (a) the facts upon which the hearing officer based his conclusion that the informant was reliable and that the information was credible. (b) a statement of the information provided by the informant as specific as possible without creating a substantial risk of disclosing the identity of the informant. The statement should demonstrate that the informant had personal knowledge of the information he provided; (2) Made a finding that the disclosure of the documentary evidence or testimony provided by the informant to the inmate or his representative would create a substantial risk of harm to the informant, to any other person, or to the security of the institution; (3) The hearing officer shall present a summary of the informant information to the inmate at the hearing. Such a presentation may, however, be foregone in cases where disclosure of the information in any greater detail than that which is contained in the disciplinary report itself would create a substantial risk of disclosing the identity of the informant. -19- 19 (4) The hearing officer may consider informant information and base the findings in 103 CMR 430.15(1) on information which is limited to oral or written hearsay evidence. The hearing officer shall not be required to interview the informant in person. -20- 20