USCA1 Opinion

 

 January 5, 1995 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1118 BRUCE K. MOORE, Plaintiff, Appellant, v. PETER PEPE, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Richard G. Stearns, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Selya and Stahl, Circuit Judges. ______________ ____________________ Bruce K. Moore on brief pro se. ______________ Nancy Ankers White, Special Assistant Attorney General, and ____________________ Michael H. Cohen, Counsel, Department of Correction, on brief for __________________ appellees. ____________________ ____________________ Per Curiam. Pro se plaintiff-appellant Bruce ___________ Moore, a prison inmate, has appealed from the district court's grant of summary judgment in favor of defendants- appellees Peter Pepe, the Superintendent at MCI-Norfolk, Philip Poirier, Michael Little, and James Giblin, all officials at MCI-Norfolk. Background __________ The facts that are undisputed are as follows. In February 1991, Moore was implicated in a scheme to falsely inculpate other inmates by placing contraband items, such as homemade knives and banned substances, in their cells. Consequently, on March 5, 1991, Moore was placed on "awaiting action" ("AA") status in the administrative segregation unit in the Receiving Building ("RB"). On March 15, Moore received a disciplinary report charging him with a number of disciplinary offenses, including, among other things, conduct which disrupted or interfered with the security or orderly running of the institution; possession or introduction of a weapon, sharpened instrument, knife, or tool; and aiding another person to commit the other charged offenses. On March 26, 1991, a disciplinary hearing was held. At that hearing, Moore admitted that he knew that another inmate was putting contraband in other inmates' cells, and that Moore had helped this other inmate type a note falsely inculpating others. The hearing officer, defendant Little, found Moore guilty of conduct which disrupted the orderly running of the institution, and of aiding another inmate to introduce sharpened instruments into other inmates' cells. Accordingly, the hearing officer sanctioned Moore with thirty days of isolation, and recommended that Moore be reclassified to higher security. Moore then appealed to defendant Superintendent Pepe, who denied the appeal on April 4. On April 10, the classification board held a hearing and recommended that Moore's request to stay at MCI-Norfolk, "in the RB on the RB workforce", be granted. The recommendation was subsequently approved. At Moore's next classification hearing, on June 5, 1991, the board recommended transfer to Bay State Correctional Center. On July 8, 1991, Moore was transferred to Southeastern Correctional Center. Moore filed the instant suit on May 28, 1992. His complaint sought damages and injunctive relief under 42 U.S.C. 1983 on the ground that his right to due process under the fourteenth amendment of the United States Constitution had been violated in the course of his disciplinary conviction and by his confinement in the RB. The complaint might also be read to allege violation of applicable Department of Correction regulations. -3- Specifically, Moore alleged (1) that the disciplinary finding against him was not supported by adequate reasons; (2) that certain of the disciplinary charges against him were vague and overbroad; (3) that before and at the disciplinary hearing, he was denied access to the evidence against him, despite making several requests for such access; (4) that his rights were violated by his being ordered into isolation, and (5) that his rights were violated by his being kept in administrative segregation, i.e., on AA status, without a conditional release date from segregation and without conditions of behavior to obtain release from segregation. On January 20, 1994, the district court granted defendants' motion for summary judgment. In a brief order, the district court ruled, "Plaintiff failed to timely appeal his disciplinary conviction. In addition, plaintiff's due process arguments are inapplicable to his claims regarding alleged errors in the disciplinary process" (citations omitted). Moore appeals. We affirm. The Merits __________ We have held that where a prison inmate faces the risk of isolation time as a result of a disciplinary charge, the inmate has a liberty interest under the due process clause in the disposition of that charge. Smith v. Massachusetts Dep't _____ ___________________ -4- of Correction, 936 F.2d 1390, 1399 (1st Cir. 1991); see ______________ ___ O'Malley v. Sheriff of Worcester County, 415 Mass. 132, 139, ________ ___________________________ 612 N.E.2d 641, 647 (1993). Accordingly, Moore, who received a disciplinary sanction of thirty days in isolation, had a liberty interest in the disciplinary proceeding. The Supreme Court has specifically spelled out the minimum procedural safeguards necessary to satisfy the requirements of due process in a prison disciplinary proceeding that may result in the loss of a liberty interest. The inmate must receive "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Superintendent v. Hill, 472 U.S. 445, 454 (1985) (citing ______________ ____ Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974)). _____ _________ Statement of evidence and reasons. Moore alleged that __________________________________ the hearing officer's written statement of the evidence relied on and the reasons for the disciplinary action was not adequate. We find this allegation meritless. The factfinder, defendant Little, stated in writing, "The inmate testified that he was aware that another inmate was deliberately placing contraband items such as sharpened instruments in the cells of inmates. He further admitted that he helped this -5- inmate finish typing a note pertaining to the contraband's location." There can be no doubt that this statement of evidence and reasons was constitutionally adequate. Insofar as Moore may have intended to challenge the sufficiency of the evidence against him, there need only be "some evidence" of guilt in the record of the disciplinary hearing to support a disciplinary conviction. Hill, supra, ___________ 472 U.S. at 454-57. Moore's own admissions easily meet that test. Moore objects that he denied any involvement in making sharpened instruments or actually placing them in other inmates' cells. The disciplinary findings, however, suggest that the hearing officer credited that denial, but nonetheless found that Moore, by admittedly helping to type the falsely inculpatory note, aided another inmate in a scheme which involved placing sharpened instruments in others' cells. Moore did assert in the district court that he was physically coerced into helping the other inmate type the note. However, in an affidavit, Moore described his testimony before the hearing officeron this point as follows: "Gaziano [the other inmate] insisted I finish his typing, Gaziano placed a hand on me and directed me to the seat behind the typewriter Gaziano was using; I read what Gaziano had typed and typed less than 2 complete lines that Gaziano dictated to me . . . ." Moore has nowhere explained why such -6- seemingly mild conduct on the part of Gaziano should be thought to have constituted physical coercion. Thus, the hearing officer's implicit finding that Moore's conduct was voluntary appears entirely reasonable. That finding was obviously not so baseless or arbitrary as to be constitutionally infirm. Vagueness. Similarly lacking in merit is Moore's claim _________ that some of the disciplinary charges against him were vague and overbroad. Our review of the charges on which Moore was convicted finds no such deficiency. The only such charge which could even arguably be thought vague was the charge of "conduct which disrupt[ed] or interfere[d] with the security or orderly running of the institution." Moore must reasonably have been on notice, however, that the specific conduct he admitted engaging in -- aiding another inmate to type a note falsely inculpating other inmates -- would be disruptive and would come under this disciplinary standard. See El-Amin v. Tirey, 817 F.Supp. 694, 701-03 (W.D.Tenn. ____________ _____ 1993), aff'd, 35 F.3d 565 (6th Cir. 1994). In any event, _____ Moore did not press this point in his brief on appeal, and has thereby waived it. Pre-hearing discovery. Moore next alleged that prior to _____________________ the hearing, he was denied access to evidence against him. In his complaint, Moore asserted that on or about March 15 and March 20, 1991, he wrote two letters to defendant Pepe in -7- which he "requested he be supplied with all alleged tangible and material evidence in photographic form, or detailed written description/report(s), or any informant(s) information, with applicable names deleted, or laboratory analysis report(s)." Moore alleged that he received no response. Moore further alleged that he made a similar request of the hearing officer, who allegedly responded that he was not in possession of any objects or documents in evidence against Moore, but was relying solely on the disciplinary report. Hill, supra, 472 U.S. 445, and Wolff, supra, 418 U.S. ____________ _____________ 539, do not specifically recognize any due process entitlement to pre-hearing discovery. In Smith, supra, 936 _____ _____ F.2d 1390, however, we held, "While Wolff does not accord an _____ inmate a [due process] right to pre-hearing discovery, we think that . . . when an inmate seeks relevant and important documents central to the construction of a defense, and his requests are repeatedly denied, an explanation of the reasons for the denial should be furnished." Id. at 1401. We went ___ on to note that the denial of discovery did not "r[i]se to a level of constitutional magnitude" where the requested items did not appear central to the inmate's defense, and where defendant's "brief on appeal is bereft of any developed argumentation to the contrary." Id. at 1401 n.18. __ -8- Moore has supplied no argument, either to the district court or to this court, why pre-hearing access to the evidence against him should be thought central to the construction of a defense. The importance of such access, moreover, is far from evident. To the contrary, the hearing officer based his ruling on Moore's admission that he helped another inmate type a note intended to inculpate other inmates. In a March 20, 1991 letter to defendant Pepe, Moore made the same admission. It is hard, therefore, to see how the denial of discovery prejudiced Moore's defense to charges that he admitted. Moore did argue in the district court that he was physically coerced into helping type the note. As we have said, however, Moore's own account of his testimony before the hearing officer suggests that this was a weak defense. In any event, it is unclear how access to physical evidence would have bolstered it. For all these reasons, we find no due process violation in the denial of Moore's discovery request without explanation. Isolation. Given the lack of any due process defect in _________ Moore's disciplinary proceeding, there is no basis for a finding that his constitutional rights were violated by his placement in isolation. Placement on AA status in the RB. We further find that _________________________________ Moore's placement on AA status in the RB -- first pending -9- investigation and resolution of the disciplinary charges against him, and then pending transfer or reclassification -- did not violate due process. The Supreme Court has ruled that the due process clause, in and of itself, does not confer upon a prisoner any liberty interest in being held in the general prison population. Hewitt v. Helms, 459 U.S. 460, 467-68 (1983). To be sure, ______ _____ state laws or regulations may create a protected liberty interest if, by setting forth "explicitly mandatory language" and "specified substantive predicates," Kentucky Dep't of __________________ Corrections v. Thompson, 490 U.S. 454, 463 (1989), they ___________ ________ "plac[e] substantive limitations on official discretion," Olim v. Wakinekona, 461 U.S. 238, 249 (1983).  ____ __________ In Stokes v. Fair, 795 F.2d 235 (1st Cir. 1986), we ______ ____ ruled that the Massachusetts Department of Correction regulations which then governed the placement of inmates in "awaiting action" detention did create a liberty interest protected by the due process clause. They did so because they permitted prison officials to place an inmate on AA status only upon the occurrence of certain conditions, such as pending investigation or hearing of a disciplinary offense or pending transfer or reclassification to higher custody status. Id. at 237. Due process would therefore require __ that an inmate placed on AA status receive an informal, non- adversary review within a reasonable time, and receive -10- subsequent periodic reviews. Hewitt, supra, 459 U.S. at 472, ______ _____ 477 n.9. In 1987, long before the events of this case, the relevant regulations were revised, with mandatory language replaced by language conveying discretion to prison officials. The current prison regulations provide that "[a]t the discretion of the Superintendent or his designee, . . . , an inmate who is under investigation for a possible disciplinary offense or has been charged with or found guilty of a disciplinary offense, may be placed on awaiting action status . . . . Such status may include more restrictive confinement as deemed appropriate by the Superintendent or his designee." 103 C.M.R. 430.21(1). The regulations call for reviews of RB placement at least weekly. Id. 423.13. Defendants argue that the current language places decisions regarding confinement on AA status wholly within the discretion of the Superintendent, and therefore creates no liberty interest. We need not resolve that question. Even if due process requirements do apply, we would find no constitutional violation. There is no dispute that Moore was initially placed on AA status in the RB pending an investigation of disciplinary charges. Following his disciplinary conviction he was kept there for a little over three months pending transfer or reclassification. Thus, he was placed and -11- maintained in the RB for purposes in accordance with applicable regulations. During that period, he received two classification board hearings regarding his status, as well as informal weekly reviews, all that due process would require. In addition, Moore has not disputed defendants' assertion that at least some significant portion of his stay in the RB was in accordance with his own request. In his brief on appeal, Moore acknowledges that at the April 10, 1991 classification hearing, he "requested to remain at MCI- Norfolk, even if such classification meant a period of confinement to receive such favorable classification." In the district court, he stated that "at this hearing [he] requested to remain in the general population [at MCI- Norfolk], even if it meant an extended stay in the R.B. to allow time for this to be approved." Before his disciplinary conviction, in a March 20, 1991 letter to defendant Pepe, Moore also stated, "[I]f I am to be punished for my association and not coming forward sooner let the punishment be a stay in the R.B." Although there is a factual dispute in the record as to whether Moore requested or agreed to placement in the RB for the entire period he was held there, under all the circumstances we could find no due process violation in Moore receiving, on a temporary basis, a classification status he had specifically requested. -12- Finally, Moore's reliance on Hoffer v. Commissioner of ______ ________________ Correction, 412 Mass. 450, 589 N.E.2d 1231 (1992), is __________ misplaced. Hoffer ruled that, given applicable prison ______ regulations, due process required that an inmate placed in the Departmental Segregation Unit ("DSU") be given a conditional date of release from the DSU, along with conditions of behavior to obtain such release. 412 Mass. at 455-56; 589 N.E.2d at 1234. The record is clear, however, that although Moore was placed on AA status in the same building, the RB, that contains the DSU, Moore was not placed ___ in the DSU. Cf. Kenney v. Commissioner of Correction, 393 ___________ ___________________________ Mass. 28, 34, 468 N.E.2d 616, 620 (1984) (recognizing the clear distinction between placement on AA status and placement in the DSU). In his brief on appeal, Moore does assert that he was held in the DSU. However, we do not read his affidavit in the district court to contain any such assertion. In the affidavit, Moore stated that he was placed on the second floor of the RB, and it is the uncontroverted assertion of defendant Pepe's affidavit that the DSU is on the first floor of the RB, while the second and third floors hold inmates on AA status. Hoffer, accordingly, is inapposite. ______ State-law claims. Insofar as Moore's complaint may have ________________ raised pendent state-law claims of violation of prison regulations, we agree with the district court's ruling that -13- such claims were time-barred. Under Massachusetts law, lawsuits challenging prison discipline must be brought within the sixty-day statute of limitations set forth at Mass. Gen. Laws c. 249, 4. McLellan v. Commissioner of Correction, 29 ________ __________________________ Mass. App. 933, 934-35, 558 N.E.2d 3, 4 (1990). Moore's final administrative appeal from his disciplinary conviction was denied in April 1991, and Moore was transferred in July 1991. This lawsuit was not filed until May 1992. Violation of local rules. Finally, there is no merit in ________________________ Moore's argument that the district court erred in granting defendants' motion for summary judgment because the motion violated the district court's Local Rule 7.1(A)(2). This Local Rule requires that the parties confer prior to the filing of any motion, and defendants apparently sought no such conference with Moore prior to filing their motion. The Local Rule, however, became effective on October 1, 1992, after defendants had already filed their motion on September 25, 1992. The judgment of the district court is affirmed. ________ -14-