ALBERT BLAKE & others[1] *vs.* COMMISSIONER OF
CORRECTION & others.[2]

Suffolk. November 8, 1988. — January 11, 1989.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Imprisonment*, Transfer of prisoner. *Damages*, Unlawful transfer of pris-
oner. *Practice, Civil*, Damages, New trial.

In a proceeding involving inmates in Massachusetts correctional institutions
who were found to have been transferred to Federal correctional institu-
tions in other States without having been afforded the procedural rights
set forth in regulations of the Department of Correction concerning the
reclassification of inmates to higher custody status, the judge did not
err in awarding damages to the inmates both for being sent out of
Massachusetts and for lost visits with their family members where,
having weighed the various harms resulting from the unlawful transfers
according to the harm inflicted, the judge clearly found two injuries
and, in his findings, distinguished between the two harms. [767]

In a proceeding involving inmates in Massachusetts correctional institutions
who were found to have been transferred to Federal correctional institu-
tions in other States without having been afforded the procedural rights
set forth in regulations of the Department of Correction concerning the
reclassification of inmates to higher custody status, damages were prop-
erly awarded to the inmates for the amount of time spent in segregation
in Federal facilities, where the judge clearly distinguished between that
time spent in segregation attributable to the wrongful transfer, for which
compensation was allowed, and that attributable either to the misconduct
of the inmates or to unforeseeable conditions, for which no compensation
was allowed. [767-769]

An award of damages to inmates in Massachusetts correctional institutions
who were found to have been transferred to Federal correctional institu-
tions in other States without having been afforded the procedural rights
set forth in regulations of the Department of Correction concerning the re-

[1] Albert Little, William Corgain, Clayton Libby, George Nassar, Gordon
O'Brien, Francis Stewart, and David Weichel.

[2] William Hogan, Louis Berman, and Michael Fair, individually. Each
defendant served as Commissioner of Correction during times when the
illegal transfers occurred. The Attorney General represents the defendants.

classification of inmates to higher custody status was, in the circumstances, neither speculative nor excessive. [769-771]

CIVIL ACTION commenced in the Superior Court Department on April 14, 1981.

Following review reported in 390 Mass. 537 (1983), further proceedings were had before *Robert J. Hallisey,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*William D. Luzier, Jr.,* Assistant Attorney General, for the defendants. .

*Barry Barkow* for the plaintiffs.

ABRAMS, J. After we affirmed the judge's allowance of the plaintiffs' motions for partial summary judgment, see *Blake* v. *Commissioner of Correction,* 390 Mass. 537, 538 n.3 (1983), another judge of the Superior Court held hearings, and thereafter entered a judgment in favor of the plaintiffs, eight Massachusetts prisoners. In *Blake,* we agreed "with the determination of a judge of the Superior Court that, under regulations of the Department of Correction . . . , an inmate in a Massachusetts correctional institution may not lawfully be transferred to a Federal correctional institution in another State unless the department has first afforded the inmate the procedural rights set forth in the department's regulations concerning the reclassification of inmates to higher custody status." *Blake, supra* at 537-538.

After judgment entered, the defendants appealed, alleging three errors. They assert that the award of damages for lost visits separately from the award of damages for the illegal out-of-State transfers permits a double recovery for the same injury; that the defendants are not responsible for the amount of time each plaintiff spent in segregation in Federal facilities; and that the damages are so excessive as to shock the conscience. We transferred the case to this court on our own motion. We affirm.

In his memorandum of decision, the judge states the facts of each plaintiff's case, including detailed summaries of the

conditions of his confinement in Massachusetts and in the Federal facilities to which the plaintiffs were transferred. The plaintiffs were held outside Massachusetts for periods ranging from 1.84 years to 3.4 years. In each case the plaintiff endured some "segregation" or "hard time" during the transfer and due to the transfer itself. In each case there had been loss of family visits or opportunity to attend other familial events because of the unlawful out-of-State transfers. Seven of the eight plaintiffs lost personal property during the transfers. Five lost the opportunity to earn credit for good conduct or "good time," which might have made them eligible for early release or other benefits.

The judge assessed damages in each case according to a formula: For each day spent in "hard time" that could be attributed to the transfer and not the plaintiff's own conduct or other conditions not attributable to the defendants, he assessed $100; for each lost visit (calculated on the basis of average number of visits while in Massachusetts), he assessed $100; and for each day out of Massachusetts, other than the days spent in "hard time," he assessed ten dollars. Personal property losses were valued according to the evidence. In addition, the judge calculated the number of earned good time credits each plaintiff had lost, based on the rate at which each plaintiff had earned such credit while in Massachusetts, and ordered that each plaintiff be credited accordingly. The individual awards ranged from $14,890 to $41,180, and averaged about $24,000.[3]

---

[3] The defendants do not argue that in light of our decision in *Blake* v. *Commissioner of Correction*, 390 Mass. 537 (1983), no damages should have been imposed. The defendants do not challenge the award of damages for lost property or the good time credits the judge ordered to be credited to the plaintiffs. These issues therefore are deemed waived. See Mass. R. A. P. 16 (a) (4). See also *Commonwealth* v. *Cundriff*, 382 Mass. 137, 150 n.22 (1980), cert. denied, 451 U.S. 973 (1981). The plaintiffs' complaint alleged violations of 42 U.S.C. § 1983 (1982), and the case appears to have been tried on that basis. "The theory of law on which by assent a case is tried cannot be disregarded when the case comes before an appellate court for review." *Santa Maria* v. *Trotto*, 297 Mass. 442, 447 (1937). See *Commonwealth* v. *Fernette*, 398 Mass. 658, 667 (1986); *Commonwealth* v. *Thompson*, 382 Mass. 379, 382 (1981).

Further, no party has challenged the mathematical computations. The plaintiffs have not appealed. "[F]ailure to take a cross appeal precludes

1. *Duplicative damages.* The defendants argue that the award of damages both for being sent out of State and for lost visits is duplicative, and the judge therefore permitted double recovery for the same injury. We do not agree.

The judge clearly found two different injuries, and in his findings he distinguished between the two harms. According to the judge, the injury in being transferred out-of-State included the plaintiffs' general sense of isolation, lost educational opportunities, their loss of opportunity to participate in Massachusetts prison programs, their inability to attend family events in Massachusetts, and their removal from friends in the community and in the general prison population. For these generalized hardships, the judge assessed ten dollars per day against the defendants.

The judge calculated lost visits from parents, spouses, and children separately. The plaintiffs had the burden to prove the number of family visits per month while in Massachusetts. For the number of visits lost, the judge awarded ten times the daily assessment. Although the loss of visits was occasioned by the transfer, the judge concluded that the injury to the prisoner from loss of family ties, and the loss of the emotional support the visits provided, were more harmful than and different from the daily injury suffered by a prisoner unlawfully transferred to an out-of-State Federal facility. The judge was entitled to weigh the various harms resulting from the unlawful transfers according to the harm inflicted and to calculate damages attributable to the defendants' unlawful conduct. There is no error of law and no abuse of discretion.

2. *Defendants' responsibility for time spent in segregation.* The defendants argue that part of the "hard time" awards assessed by the judge were attributable to the independent decisions of

a party from obtaining a judgment more favorable to it than the judgment entered below." *Boston Edison Co.* v. *Boston Redevelopment Auth.*, 374 Mass. 37, 43 n.5 (1977). *Benalcazar* v. *Goldsmith*, 400 Mass. 111, 113 n.9 (1987). Accordingly, we will not disturb the judgment below insofar as it errs in favor of the defendants. The defendants, for their part, have not argued on appeal that the miscalculations that favor the plaintiffs should be corrected. We deem the issue waived. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).

the Federal authorities who had custody of the plaintiffs. These hardships, the defendants argue, were not predictable or foreseeable and the defendants' part in causing them was "attenuated."[4] Therefore, they argue, they cannot properly be held liable for all of the "hard time" the plaintiffs endured. The judge ruled that the defendants were "liable for the natural and probable consequences of [their] acts; not, however, for the results of intervening, superseding, unforeseeable acts of third parties." He also ruled that the defendants were not responsible for any segregation due to the conduct of the plaintiffs.

The judge distinguished between those times attributable to the wrongful transfer and those attributable either to the misconduct of the plaintiffs or to unforeseeable conditions, for example, the fact that one of the Federal facilities was in a "lock down" condition at the time the plaintiff arrived. "The normal procedure . . . of placing every new inmate who is transferred from another facility in administrative segregation until such time as an independent evaluation may be made of the appropriate treatment for and placement of the particular individual, is . . . a prudent exercise of judgment in connection with the maintenance of security." *Mack* v. *Johnson*, 430 F. Supp. 1139, 1149 (E.D. Pa. 1977).[5]

The judge carefully detailed the amount of time each plaintiff spent in segregation. He included in his awards those times the plaintiffs spent in segregation while they were being transferred from one Federal facility to another, on the basis that these were the "natural and probable consequences" of the defendants' actions.

---

[4] In their brief, the defendants concede that immediately following the transfers the plaintiffs spent some time in segregation. That policy is consistent with the Bookings and Admissions Policy of the Department of Correction in this Commonwealth. See 103 D.O.C. §§ 401.00 et seq. The defendants challenge the judge's appraisal of the evidence as to what segregation periods were foreseeable. That is a factual determination for the finder of fact. "[I]t is the [fact finder's] function to determine 'whether the circumstances of . . . the plaintiff's subsequent injury were reasonably foreseeable.'" *Colter* v. *Barber-Greene Co.*, *ante* 50, 57 (1988), quoting *Fahey* v. *Rockwell Graphics Syss.*, 20 Mass. App. Ct. 642, 648 (1985).

[5] The Department of Correction has a similar policy. G. L. c. 127, § 16. See 103 D.O.C. § 630.13 (admissions and booking policy).

Neither the fact that some of the segregation was ordered by the Federal authorities, nor the lapse of time in some instances between the original wrongful transfer and the plaintiffs' subjection to "hard time" in Federal facilities, relieves the defendants of liability. "The act of a third person, intervening and contributing a condition necessary to the injurious effect of the original [wrongful act], will not excuse the first wrongdoer, if such act ought to have been foreseen. The original [wrongful act] still remains a culpable and direct cause of the injury. The test is to be found in the probable injurious consequences which were to be anticipated, not in the number of subsequent events and agencies which might arise." *Jesionek* v. *Massachusetts Port Auth.*, 376 Mass. 101, 105 (1976), quoting *Lane* v. *Atlantic Works*, 111 Mass. 136, 139-140 (1872).

3. *Excessive damages.* The defendants argue that the awards are shocking and excessive. We do not agree. At the outset, we note that a per diem assessment is "the most sensible and satisfactory system a Court can use in the calculation of damages" in these cases. *Mack* v. *Johnson,* *supra* at 1151. See also *O'Connor* v. *Keller*, 510 F. Supp. 1359 (D. Md. 1981) ($100 per day for cruel and unusual conditions of isolation not excessive). The awards made by the judge were similar to those made in other cases. See, e.g., *Mary & Crystal* v. *Ramsden*, 635 F.2d 590 (7th Cir. 1980) ($2,400 for 29 days, and $1,600 for 19 days, respectively, in isolation, plus $2,900 for psychologist's refusal to see an inmate in emotional distress due to cruel and unusual conditions, not excessive); *Saxner* v. *Benson*, 727 F.2d 669 (7th Cir. 1984), aff'd sub nom., *Cleavinger* v. *Saxner*, 474 U.S. 193 (1985) ($4,500 for 35 days in segregation not excessive); *Smith* v. *Rowe*, 761 F.2d 360 (7th Cir. 1985) ($80,770 for 22½ months in punitive segregation not excessive); *Maxwell* v. *Mason*, 668 F.2d 361 (8th Cir. 1981) ($1,400 for 14 days in isolation with inadequate clothing not excessive); *United States ex rel. Larkins* v. *Oswald*, 510 F.2d 583 (2d Cir. 1975) ($1,000 for twelve days in isolation not excessive).

The defendants suggest that the damages are "remote or uncertain, contingent or speculative" and therefore not susceptible to proof or valuation, and that it is improper to presume damages merely from a deprivation of due process. "[A] prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime. There is no iron curtain drawn between the Constitution and the prisons of this country. . . . [Prisoners] may not be deprived of life, liberty, or property without due process of law." *Wolff* v. *McDonnell*, 418 U.S. 539, 555-556 (1974). A deprivation of constitutional rights, even without proof of any further actual injury, entitles a plaintiff to nominal damages. *Carey* v. *Piphus*, 435 U.S. 247, 266 (1978). If further injury is proved — for example, the "anguish and frustration . . . flow[ing] from the patent unfairness of the hearings and the fear that such unfair treatment would continue in the future" — it is compensable beyond nominal damages. *Saxner* v. *Benson, supra* at 672. "The value of . . . [constitutional] rights, while difficult of assessment, must be considered great." *Farber* v. *Rizzo*, 363 F. Supp. 386, 398 (E.D. Pa. 1973).

The judge found that the illegal transfers caused some plaintiffs lost educational opportunities and lost prison jobs, as well as lost friendships among the prison population. The judge found that the plaintiffs proved that they suffered emotional and physical privation from the separation from parents, spouses, and children while out of Massachusetts. Based on the evidence, the judge could conclude that the plaintiffs' injuries were not speculative, and that the illegal transfers had compensable injurious consequences to the plaintiffs.

Finally, the defendants argue that in any event the damages are excessive and we should reduce them. "Questions concerning inadequate or excessive damages . . . should ordinarily be raised by bringing a motion for a new trial . . . ." *Pridgen* v. *Boston Hous. Auth.*, 364 Mass. 696, 715 (1974).[6] "We have

---

[6] Review of the denial of such a motion would be limited to whether the judge abused his or her discretion. See *Griffin* v. *General Motors Corp.*, 380 Mass. 362, 370-371 (1980); *D'Annolfo* v. *Stoneham Hous. Auth.*, 375 Mass. 650, 660-662 (1978); *Loschi* v. *Massachusetts Port Auth.*, 361 Mass. 714, 715 (1972).

said on numerous occasions that the allowance of a motion for a new trial based upon an inadequate or excessive award of damages, and the direction of an addition or remittitur, rests in the sound discretion of the judge." *Loschi* v. *Massachusetts Port Auth.*, 361 Mass. 714, 715 (1972). See *D'Annolfo* v. *Stoneham Hous. Auth.*, 375 Mass. 650, 659-662 (1978). See also Mass. R. Civ. P. 59 (a), 365 Mass. 827 (1974). The record does not disclose any effort by the defendants to obtain a remittitur by posttrial motion. The defendants failed to raise the issue with the trial judge. We do not substitute our judgment for that of the trial judge who saw the witnesses.

*Judgment affirmed.*