NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1386

RIVERVIEW CONSTRUCTORS, LLC

vs.

RCS LEARNING CENTER, INC., & others[1] (and a consolidated case[2]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This construction dispute originated in a failed real estate deal by which defendants RCS Learning Center, Inc. and RCS, Behavioral and Educational Consulting LLC (collectively, RCS) planned to purchase adjacent parcels of land in Framingham (the property) from defendants Northside LLC and Ann B. Pratt,

---

[1] RCS, Behavioral and Educational Consulting LLC; Northside LLC; and Ann B. Pratt, trustee of the Nobscot Realty Trust; and trustee defendants Brookline Bank, Commerce Bank & Trust Co., Middlesex Savings Bank, and Santander Bank, N.A.  The trustee defendants did not file a brief in this appeal.

[2] Maine Drilling & Blasting, Inc. vs. Riverview Constructors, LLC; RCS Learning Center, Inc.; RCS, Behavioral and Educational Consulting LLC; Northside LLC; and Ann B. Pratt, trustee of the Nobscot Realty Trust.

trustee of the Nobscot Realty Trust (collectively, Nobscot).
Before RCS and Nobscot consummated that transaction, RCS
contracted, with Nobscot's written consent, for plaintiff
Riverview Constructors, LLC (Riverview), to build a school on
the property.  After Riverview and a subcontractor, Maine
Drilling & Blasting, Inc. (Maine Drilling), performed work, the
defendants' real estate deal fell apart, leading to this and
other litigation.[3]  Riverview filed suit in Superior Court
against RCS for breach of contract and related claims, and
against Nobscot to enforce its mechanic's lien on the property.[4]
Maine Drilling filed suit against Riverview, RCS, and Nobscot to
enforce its mechanic's lien on the property.[5]

The cases were consolidated for a jury trial.[6]  The jury
returned a special verdict finding RCS in breach of a written

---

[3] See Ria K. McNamara, Inc. v. Pratt, 104 Mass. App. Ct.
1118 (2024); RCS Learning Ctr., Inc. v. Pratt, 103 Mass. App.
Ct. 1118 (2024).

[4] Riverview also sought trustee process against four banks
holding RCS assets.  Three of those banks deposited funds into
court, but the banks did not otherwise participate in the
litigation.

[5] Maine Drilling also brought contract and related claims
against Riverview, and claims against Riverview and RCS for
violations of G. L. c. 93A and the prompt payment law, G. L.
c. 149, § 29E.  Those claims settled before trial.

[6] Riverview's claims against RCS for violation of G. L.
c. 93A and for fraudulent transfer of funds were bifurcated
before trial.  Ultimately the judge found for RCS on those
claims.  The issues raised by those findings are not before us.

2

contract for $1.6 million and the corresponding covenant of good faith and fair dealing, causing Riverview damages of $530,190; and in breach of an implied contract for work pursuant to a change order, for which Riverview was entitled to recover $149,000 in quantum meruit.  Judgment entered for Riverview.

RCS filed motions for a new trial and for judgment notwithstanding the verdict, arguing that Riverview did not prove the existence of a contract for $1.6 million or RCS's breach of that contract, Riverview failed to plead and prove damages, and the judge erred in instructing the jury on damages. Nobscot moved for discharge of the mechanic's liens of Riverview and Maine Drilling, arguing that neither had a written contract with Nobscot, and alternatively that any contract between Riverview and Nobscot was limited to a contract price of $84,500.  The judge denied the postjudgment motions.  RCS and Nobscot appeal, making those same contentions.  We affirm.

Discussion.  1.  Sufficiency of evidence of contract.  RCS and Nobscot challenge the sufficiency of the evidence underlying Riverview's contract claims.

a.  Scope of contract.  RCS and Nobscot argue that any contract between RCS and Riverview permitted Riverview to perform only $84,500 worth of work and not the entire $1.6 million contract price.

In June 2016, Riverview sent RCS a site work proposal listing thirty-three categories of work it would perform to build the school on the property. The proposal specified that Riverview's "Total Base Bid" was in the amount of $1.6 million.

RCS's project manager Peter Cullinan drafted a "letter of intent to contract " (letter of intent) that incorporated by reference Riverview's proposal. Cullinan did not draft a formal contract because RCS did not have financing in place and, as the letter of intent stated, "final value engineering and construction details remain to be resolved." On August 17, 2016, principals for RCS, Nobscot, and Riverview signed the letter of intent. The letter of intent stated that, "with the consent of [Nobscot]," RCS was authorizing Riverview to start building the school by performing the first six items listed on Riverview's proposal, not to exceed a cost of $84,500. The letter of intent stated, "Work is to be initiated as soon as possible, and if the project is placed on hold for reasons not in [Riverview]'s control, [it] shall be compensated for the costs [it] has incurred to the point of stoppage."

Riverview began work in August 2016, and submitted monthly applications for payment to RCS. Each of Riverview's payment applications stated that the "ORIGINAL CONTRACT SUM" was $1.6 million. For several months, RCS paid Riverview promptly. By the end of October, the total amount that Riverview had billed

4

and RCS had paid was more than twice the $84,500 amount set forth in the letter of intent. Cullinan testified that the work continued beyond the scope of the first six items listed on the letter of intent because "RCS wanted to continue to proceed." RCS's president, Denise Rizzo-Ranieri, testified that RCS paid Riverview because RCS had agreed to the payments and wanted to "make good" on the work Riverview had done, with which she was content.

The scope of the parties' agreement was a question of fact for the jury. See Situation Mgt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 879 (2000). The letter of intent signed by principals for RCS, Nobscot, and Riverview sufficed to establish a meeting of the minds on the material terms of the contract. The letter of intent stated that Riverview was authorized "to initiate the development of the Project," a term defined earlier in the letter to mean the building of the entire school. See Sea Breeze Estates, LLC v. Jarema, 94 Mass. App. Ct. 210, 215 (2018) (mutual assent occurs where there is offer by one party and acceptance by other "in the terms in which [the offer] is made" [citation omitted]). The jury was not required to believe that RCS and Nobscot only agreed to six items of work at a cost of $84,500, especially because RCS paid Riverview far more than that amount, on invoices referencing $1.6 million as the "ORIGINAL CONTRACT SUM." The jury could find that, by their

course of conduct, the parties excused the failure to execute a formal contract as contemplated by the letter of intent. See Situation Mgt. Sys., Inc., supra at 878-879; Prism Group, Inc. v. Slingshot Tech. Corp., 104 Mass. App. Ct. 785, 796 n.7 (2024).

b. Maine Drilling's blasting work. Riverview's proposal, which was incorporated by reference into the letter of intent, listed an alternate task, "Drill Blast & Remove Ledge Boulders," for the amount of $343,062 that was included within the $1.6 million contract price. [In late September 2016, RCS authorized that blasting work. Riverview subcontracted the blasting to Maine Drilling, which performed that work between December 2016 and early March 2017. The parties stipulated that Riverview and Maine Drilling's subcontract was worth $285,973.14, of which Riverview had paid $28,000, leaving a balance of $257,973.14.

RCS's president testified that RCS "agreed to do the blasting" and that she knew that Maine Drilling was performing that work. The letter of intent signed by principals for both RCS and Nobscot incorporated by reference Riverview's proposal describing the drilling and blasting work. Nobscot never questioned why blasting work was being done on its property.

Based on the evidence, the jury could have found that RCS authorized Riverview to subcontract Maine Drilling's work. To prove that Nobscot consented to Maine Drilling's work,

6

"something more than awareness of an intent to perform work, or awareness of ongoing work, and a failure to object" was required. Trace Constr., Inc. v. Dana Barros Sports Complex, LLC, 459 Mass. 346, 355 (2011). As discussed above, the jury could interpret the letter of intent to mean that RCS and Nobscot agreed to Riverview's entire proposal, and not just the first six items.

c. Change order. RCS argues that there was insufficient evidence to support the jury verdict for an implied contract for $149,000 arising from a change order. RCS contends that it did not approve the change order, and alternatively that Riverview waived its right to payment.

Riverview's principal, Bruce Ross (Ross), testified that in January 2017, RCS informed Riverview of changes to the plans necessitated by issues including zoning requirements. Riverview performed that additional work and submitted a change order in the amount of $149,070, but RCS did not pay it. Based on that evidence, the jury had ample basis to conclude that RCS did in fact approve that work and then breached the implied contract.

As for RCS's claim that Riverview waived its right to payment under the change order by accepting late payments on its invoices for November and December 2016 and by delaying in submitting an invoice for the change order, it is unavailing. Ross testified that, after he learned that RCS was having

7

problems obtaining financing, he did not demand prompt payment from RCS but he still expected RCS to pay Riverview. "Mere acceptance of a partial payment of monies owed under a contract does not waive the entitlement to the full amount due." Prism Group, Inc., 104 Mass. App. Ct. at 791.

2. Damages. a. Pleading requirement. RCS argues that lost profits are special damages that Riverview was required to allege in its complaint, and RCS was unfairly surprised when it learned from the joint pretrial memorandum filed shortly before trial that Riverview was seeking its lost profits. We are not persuaded.

In its complaint, Riverview alleged that, but for RCS's breach, Riverview would have received $1.6 million plus $149,070 for the change order. As discussed below, Ross explained at trial that Riverview's profit was subsumed in the $1.6 million contract price. As required by the mechanic's lien statute, G. L. c. 254, § 5, the complaint alleged that the outstanding balance due on the contract was $552,195.[7] Contrary to RCS's argument, the allegation of the outstanding balance was not an impermissible "ad damnum" because it was "ascertainable by calculation" and supported by the sworn statement of Riverview's

_____

[7] The complaint alleged that $991,750 was the value of the work that Riverview had performed on the contract and the change order, minus the $439,375 RCS had paid, equaling $552,195.

8

manager.  G. L. c. 231, § 13B.  Contrast Friedman v. Globe Newspaper Co., 38 Mass. App. Ct. 923, 924 (1995) (within judge's discretion to dismiss libel complaint alleging damages which were neither liquidated nor ascertainable by calculation).

b.  Ross's testimony about Riverview's anticipated profit. RCS moved in limine to preclude Riverview from presenting evidence of its "lost profits," arguing that those were "special" damages that Riverview was required to specifically plead pursuant to Mass. R. Civ. P. 9 (g), 365 Mass. 751 (1974). The judge denied the motion.  RCS contends that the judge erred in permitting Ross to testify about Riverview's anticipated profits, those damages were speculative, and Riverview was required to present expert testimony to support them.

Ross, who had worked in the construction industry for forty-eight years, testified that the $1.6 million contract amount included fifteen percent for Riverview's profit, i.e., $240,000, because profit was Ross's purpose in running a business and that was what he anticipated making on the project.

"The basic principle of contract damages is that the aggrieved party should be put in as good a position as if the other party had fully performed."  Laurin v. DeCarolis Const. Co., 372 Mass. 688, 691 (1977).  As to breach of a construction contract, damages "may include . . . anticipated profits." Lawrence v. Falzarano, 380 Mass. 18, 28 (1980).  See Situation

9

Mgt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 880 (2000) ("award of 'expectancy' damages may include lost profits"). See generally Restatement (2nd) Contracts § 346 (2024). Ross's testimony about Riverview's anticipated profit was not speculative and did not require testimony of a witness with any expertise beyond his. Contrast LightLab Imaging, Inc. v. Axsun Technologies, Inc., 469 Mass. 181, 191 (2014) (plaintiff's expert's opinion on lost profits damages was based on "dubious assumption about brand loyalty" and thus speculative).

Riverview's anticipated profits were not "special" damages within the meaning of Rule 9 (g), because they "necessarily ar[o]se from the act complained of" (citation omitted). Reporter's Notes to Rule 9 (g), Mass. Rules of Court, Rules of Civil Procedure, at 22-23 (Thomson Reuters 2024). RCS misplaces its reliance on Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 479 (1991), which referred to lost profits as "special damages" in the context of describing that appellant's argument that "in this case lost profits are too speculative and too remote a measure of damages."

c. Jury instruction on damages. RCS contends that the judge erred in instructing the jury on damages. RCS requested a jury instruction that Riverview was not entitled to recover expectancy damages or lost profits. The judge denied the request.

10

The judge instructed the jury to determine Riverview's lost profits as follows:

> "First, you determine the parties' agreed contract price. Next, you determine how much, if any, payment RCS Learning Center made. Third, you determine what labor or material costs or other expenses Riverview Constructors LLC would have had to pay in order to complete its obligation under the contract. Finally, you calculate the amount of lost profit. To do this, you take the agreed contract price and then subtract the amount RCS Learning Center paid and any labor or material costs or other expenses that Riverview Constructors LLC would have had to pay in order to complete its end of the contract. The result is Riverview Constructors LLC's lost profit."

That language tracked that of the Superior Court's model jury instruction on lost profits in contract cases. See Superior Court Model Jury Instructions on Contract Damages and Other Special Contract Issues, 10-11 (Aug. 2021).

The instruction on lost profits conveyed "the proper legal standard." Luppold v. Hanlon, 495 Mass. 148, 159 n.11 (2025) ("Instructions that convey the proper legal standard, particularly when tracking model jury instructions, are deemed correct" [citation omitted]). As the judge explained, contract damages are determined by calculating the damage to the plaintiff from the defendant's breach. See 477 Harrison Ave., LLC v. JACE Boston, LLC, 483 Mass. 514, 523 (2019).

c. Amount of damages. RCS argues that the judge erred in denying its motion for a new trial on the grounds that the jury award of $530,190 in damages to Riverview was excessive. "[T]he

11

allowance of a motion for a new trial based upon an inadequate or excessive award of damages, and the direction of an addition or remittitur, rests in the sound discretion of the judge." Baudanza v. Comcast of Mass. I, Inc., 454 Mass. 622, 630 (2009), quoting Blake v. Commissioner of Correction, 403 Mass. 764, 771 (1989). We apply a "highly deferential" standard in assessing the evidence supporting a jury's award of damages and will overturn such an award only if it is "clearly excessive in relation to what the plaintiff's evidence ha[d] demonstrated damages to be." Spinosa v. Tufts, 98 Mass. App. Ct. 1, 10 (2020), quoting Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 404, cert. denied sub nom. Globe Newspaper Co. v. Ayash, 546 U.S. 927 (2005).

We conclude that the judge acted within her sound discretion in denying the motion for a new trial. We note that the jury award was less than the $552,195 alleged in Riverview's complaint as the balance due on the contract. The jury had before it ample evidence to support the award, including Riverview's invoices.

3. Mechanic's liens. Nobscot contends that the judge erred in denying its motions for discharge of Riverview's and Maine Drilling's mechanic's liens.

A mechanic's lien is a "creature of statute, which compels strict compliance in order to obtain relief" (quotation and

12

citation omitted).  Bruno v. Alliance Rental Group, LLC, 103 Mass. App. Ct. 170, 174-175 (2023).  To obtain relief, Riverview, as contractor, was required to record in the registry of deeds notice that it had a written construction contract with either the property owner, i.e., Nobscot, "or with any person acting . . . with the consent of such owner," i.e., RCS.  G. L. c. 254, § 2.  See Trace Constr., Inc., 459 Mass. at 352 ("a contractor can establish a valid lien on a property interest when he or she contracts with a person acting with the consent of the owner of that property interest").  In May 2017, Riverview recorded its notice of contract.  Riverview's notice of contract stated that its mechanic's lien was "by virtue of a written contract dated August 17, 2016," i.e., the letter of intent signed by RCS, Nobscot, and Riverview.

Nobscot argues that there was insufficient evidence that Riverview had a contract with Nobscot.  In denying the motion for discharge of Riverview's mechanic's lien, the judge concluded that "Nobscot participated in the creation and execution of the written letter of intent, which, when considered along with the series of other writings including the June 2016 proposal, invoices, and checks, formed the basis upon which the jury found that a valid and binding contract existed between the parties in the present actions."  See Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 68 Mass.

13

App. Ct. 582, 600 (2007) (multiple writings read together constituted contract satisfying Statute of Frauds).

As to Maine Drilling's subcontractor mechanic's lien, Maine Drilling was required to record in the registry of deeds notice that it furnished labor, equipment, and construction services "under a written contract with a contractor," i.e., Riverview; upon giving actual notice of that filing to the property owner, Maine Drilling "shall have a lien upon" the property "owned by the party who entered into the original contract." G. L. c. 254, § 4. In May 2017, Maine Drilling recorded its notice of contract, of which it sent copies to RCS and Nobscot.

Nobscot argues that because Maine Drilling's subcontractor mechanic's lien was derived from Riverview's contract with RCS, that lien was extinguished when the real estate deal between RCS and Nobscot fell apart. The argument is unavailing, because, as the jury found, Nobscot was also a party to the contract documented in the letter of intent. Contrast Trace Constr., Inc., 459 Mass. at 356-357 (where property owner was not party to contract between tenant and contractor, G. L. c. 254, § 4 did not permit mechanic's lien for subcontractor). In those circumstances, as the judge put it, "Maine Drilling is only required to have a written contract with Riverview in order to maintain its mechanic's lien on the property, which it does."

14

See Business Interiors Floor Covering Business Trust v. Graycor Constr. Co., 494 Mass. 216, 224-225 (2024).

We discern no error or abuse of discretion in the judge's denial of Nobscot's motion for discharge of the mechanic's liens of Riverview and Maine Drilling.

Judgment affirmed.

Orders dated September 19,
   2023, denying motions for
   judgment notwithstanding
   the verdict, for a new
   trial, and for discharge of
   mechanic's liens, affirmed.

By the Court (Blake, C.J.,
   Neyman & Grant, JJ.[8]),

Clerk

Entered:  March 18, 2025.

---

[8] The panelists are listed in order of seniority.