NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1215

REVOLI CONSTRUCTION CO., INC.

vs.

CITY OF WORCESTER.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Revoli Construction Co., Inc. (Revoli) brought this action against the city of Worcester (city), alleging that the city violated the public bidding laws, G. L. c. 30, § 39M, in bad faith by rejecting Revoli's bid for the Route 20 sewer extension project in that city (project). Following a trial in the Superior Court, a jury found that the city acted in bad faith and awarded Revoli $3 million in lost profits. On appeal, the city argues that (1) the trial judge should have instructed the jury on the presumption of good faith, (2) the trial judge erred in denying the city's motions for a directed verdict and a judgment notwithstanding the verdict, and (3) the evidence at

trial was insufficient to support the damages award of $3 million in lost profits.  We affirm.

Background.  In reviewing a judgment notwithstanding the verdict, "we consider the facts and inferences therefrom in the light most favorable to the plaintiff to determine if 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.'"  Phelan v. May Dep't Stores Co., 60 Mass. App. Ct. 843, 844 (2004), quoting Stapleton v. Macchi, 401 Mass. 725, 728 (1988).  We recite the facts in that light, reserving certain details for discussion of specific issues.

In August 2017, Revoli submitted a bid for the project. Mark Elbag, the city's director of engineering, and Antonio da Cruz, a vice-president at Tighe & Bond, Inc. (Tighe & Bond), an engineering firm,[1] were present at the bid opening for the project.  Though neither Elbag nor da Cruz had firsthand experience with Revoli they had a conversation at the bid opening in which at least one of them raised concerns about Revoli's being difficult to work with.[2]

_____

[1] The city hired Tighe & Bond to act as an engineer for the project.  Tighe & Bond's duties included evaluating the bids the city received.

[2] Elbag testified that da Cruz told him that "[h]e had concerns about Revoli," related to "general trouble through the

2

Revoli was the low bidder on the project. That same morning, Elbag sent an e-mail message to Paul Moosey, the city's commissioner of public works and parks, to inform him that Revoli was the low bidder. Moosey, who also had no firsthand experience with Revoli, responded, "What else for bad news." Later that day, da Cruz emailed his colleagues at Tighe & Bond, writing that the "[c]ity doesn't want Revoli so we're going to inquire about Chicopee's approach to baring [sic] them."

Following these communications, Tighe & Bond began its review process, which involved contacting cities and towns that the bidders had previously worked with, filling out evaluation forms, and drafting a recommendation letter to Moosey. The city requested that the recommendation letter evaluate the bid information for the three low bidders, which were Revoli, P. Gioioso & Sons, Inc. (Gioioso), and RJV Construction Corp. (RJV). Tighe & Bond's recommendation letter ultimately concluded that "Revoli has not demonstrated that they are the lowest responsible and eligible bidder." More specifically, the letter opined that Revoli did not have the requisite experience and ability to complete a construction contract as large as the project. The recommendation letter also summarized Revoli's

---

construction process." Da Cruz testified that Elbag "voiced concerns about Revoli."

3

reference evaluations and found that "many contacted references indicated a propensity to excessive change orders, unreasonable change order requests, litigation and some would not recommend Revoli for a project with difficult construction." Notably, the recommendation letter contained no negative reference information about the second and third lowest bidders -- Gioioso and RJV.

After Tighe & Bonde completed its review, Moosey recommended to the city manager that he reject Revoli's bid and award the project to Gioioso, which the city manager did.

Discussion. 1. Jury instruction on presumption of good faith. The city first argues that the trial judge erred by not instructing the jury on the presumption of good faith and by not applying the presumption in his denial of the city's motions for a directed verdict and judgment notwithstanding the verdict. We disagree.

"When reviewing jury instructions to which there has been an objection, we conduct a two-part test: whether the instructions were legally erroneous, and (if so) whether that error was prejudicial" (quotation and citation omitted). Main v. R.J. Reynolds Tobacco Co., 100 Mass. App. Ct. 827, 834 (2022). "In examining whether an instruction adequately explain[s] the applicable law, we consider the adequacy of the instructions as a whole" (quotations and citations omitted).

4

Governo Law Firm LLC v. Bergeron, 487 Mass. 188, 194 (2021). "An error in jury instructions is not grounds for setting aside a verdict . . . unless the result might have differed absent the error." Id., quoting Blackstone v. Cashman, 448 Mass. 255, 270 (2007).

To be sure, public officials are presumed to act in good faith. See Nantasket Beachfront Condominiums, LLC v. Hull Redev. Authority, 87 Mass. App. Ct. 455, 464 (2015). But "a presumption, using the word in its technical and proper sense, can have no operative effect unless it assists the party having the burden of proof." Epstein v. Boston Hous. Authority, 317 Mass. 297, 302 (1944).

Here, the presumption of good faith in favor of the city had no operative effect because Revoli always had the burden of proving that the city acted in bad faith. See Modern Cont. Constr. Co. v. Massachusetts Port Authority, 369 Mass. 825, 828 (1976) (bidder bears burden of proving awarding authority "acted in bad faith or in an arbitrary or unreasonable manner"). Instead, the presumption was "merely a restatement that the burden of persuasion . . . from the outset" was on Revoli (quotation and citation omitted). General Elec. Co. v. Assessors of Lynn, 393 Mass. 591, 598 (1984). Thus, it was not

5

legally erroneous for the trial judge not to instruct the jury on the presumption of good faith.[3]

2. Motions for directed verdict and judgment notwithstanding the verdict. "The denial of a motion for directed verdict or a motion for judgment notwithstanding the verdict both present questions of law reviewed under the same standard used by the trial judge." O'Brien v. Pearson, 449 Mass. 377, 383 (2007). In reviewing these motions, we "construe the evidence in the light most favorable to the nonmoving party and disregard that favorable to the moving party." Id. "The verdict will be upheld if it may be determined that anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff" (quotation and citation omitted). Sullivan v. Five Acres Realty Trust, 487 Mass. 64, 68 (2021).

_____

[3] Because Revoli's burden was unaffected by the presumption of good faith, we also reject the city's argument that the trial judge erred by not applying the presumption in his review of the city's motions for a directed verdict and judgment notwithstanding the verdict. The trial judge only had to determine whether, in the light most favorable to Revoli, there was sufficient evidence for the jury to draw a reasonable inference that the city acted in bad faith. See O'Brien v. Pearson, 449 Mass. 377, 383-384 (2007). As discussed infra, the evidence was sufficient for the jury to find bad faith.

"Bad faith is a 'general and somewhat indefinite term' that goes beyond 'bad judgment' or 'negligence,' suggesting 'a dishonest purpose or some moral obliquity,' a 'conscious doing of wrong,' or a 'breach of a known duty through some motive of interest or ill will.'" Buffalo-Water 1, LLC v. Fidelity Real Estate Co., LLC, 481 Mass. 13, 25-26 (2018), quoting Spiegel v. Beacon Participations, Inc., 297 Mass. 398, 416 (1937). "In the context of State action, [bad faith] includes the use of an otherwise lawful power for an improper purpose." Judge Rotenberg Educ. Ctr., Inc. v. Commissioner of the Dep't of Developmental Servs., 492 Mass. 772, 790 (2023). See Pheasant Ridge Assocs. Ltd. Partnership v. Burlington, 399 Mass. 771, 777-780 (1987) (taking of land for public park pursuant to town meeting vote was invalid where manifest purpose behind taking was to block low or moderate income housing); Northeast Reclamation Corp. v. Wareham, 54 Mass. App. Ct. 564, 566 (2002) (jury's finding of bad faith supported by evidence of "town's pretextual rejection of the plaintiff's bid because of threats of litigation made by an ineligible bidder").

The public bidding laws establish "an honest and open procedure for competition for public contracts and, in so doing, places all general contractors and subbidders on an equal footing in the competition to gain the contract." Interstate Eng'g Corp. v. Fitchburg, 367 Mass. 751, 758 (1975). "[A]n

7

essential element of the equal footing principle not only requires that bidders have the opportunity to bid in the same way, but mandates that bidders bear the same risk of rejection" (emphasis added; quotation and citation omitted).  Petricca Constr. Co. v. Commonwealth, 37 Mass. App. Ct. 392, 397 (1994).[4]

Here, in the light most favorable to Revoli, there was ample evidence from which the jury could infer that the city acted in bad faith in rejecting Revoli's bid.  First, at the time of the bid opening, neither Moosey nor Elbag nor da Cruz had firsthand experience with Revoli.  Second, just hours after bids were opened, da Cruz sent an e-mail message to his colleagues at Tighe & Bond stating that the "[c]ity doesn't want Revoli so we're going to inquire about Chicopee's approach to baring [sic] them," and that Moosey wanted Tighe & Bond "to look into the possibility of throwing out Revoli."  Moosey also left a voice message for the vice-president of another engineering firm, saying that "he has heard Revoli is a poor contractor and wanted some references to call so he could build a case to reject them."  Third, Tighe & Bond omitted from its

---

[4] In arguing that the city did not act in bad faith, the city relies on bid protest decisions from the Attorney General, but these decisions "carry no precedential weight" because "they arise from the Attorney General's prosecutorial, rather than her adjudicative, function."  Fordyce v. Hanover, 457 Mass. 248, 257 (2010).

recommendation letter several positive reviews it received for Revoli while highlighting negative reviews it received for Revoli.[5]  Tighe & Bond's recommendation letter also did not mention that Gioioso had twenty-two Occupational Safety and Health Administration violations from 2007 to 2017, whereas Revoli only had two violations in that same time period.

In the light most favorable to Revoli, the jury could have reasonably concluded that the city did not want to award Revoli the project, and that the city acted in bad faith by putting its thumb on the scale of the bid review process to ensure that Revoli would not be awarded the project.  Regardless of whether the city's concerns about Revoli were genuine, the jury could conclude that it was an affront to the public bidding laws for the city to use rumor, innuendo, or speculation as a pretext to disqualify Revoli before the bid review process even began.  See Northeast Reclamation, 54 Mass. App. Ct. at 566.

3.  Damages.  The city argues that there was insufficient evidence to support the jury's damages award of $3 million in lost profits.  We are not convinced.

"[T]he allowance of a motion for a new trial based upon an inadequate or excessive award of damages, and the direction of

---

[5] Elbag and Moosey were involved with the bid review process.

9

an addition or remittitur, rests in the sound discretion of the judge."  Baudanza v. Comcast of Mass. I, Inc., 454 Mass. 622, 630 (2009), quoting Blake v. Commissioner of Correction, 403 Mass. 764, 771 (1989).  We apply a "highly deferential" standard in assessing the evidence supporting a jury's award of damages and will overturn such an award only if it is "clearly excessive in relation to what the plaintiff's evidence ha[d] demonstrated damages to be."  Spinosa v. Tufts, 98 Mass. App. Ct. 1, 10 (2020), quoting Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 404, cert. denied sub nom. Globe Newspaper Co. v. Ayash, 546 U.S. 927 (2005).

Here, Revoli's principal, Shawqi Alsarabi, testified that after analyzing the project plans and spending eighteen hours over two days at the job site to become familiar with it, he created a spreadsheet to estimate the cost of the project.  The spreadsheet consisted of each individual bid item and the estimated labor and equipment costs.  The spreadsheet also included indirect overhead costs, which Alsarabi described as the costs to operate and oversee the project.[6]  The sum of the direct and indirect expenses in the spreadsheet amounted to slightly over $11.3 million.  Based on the bid and the

---

[6] Example costs included the bond guaranteeing Revoli would perform the project, a health and safety plan, the field office trailer, and a project superintendent -- among other things.

10

anticipated competition, Alsarabi estimated that a profit figure of about $4.6 million would give Revoli a competitive price against other bidders.  Alsarabi testified that the $4.6 million constituted a net profit of forty percent on the project, which was lower than the profit percentage on three-fourths of Revoli's completed projects from October 2008 to September 2018. Adding the anticipated profit to the direct and indirect costs, Alsarabi calculated a total bid price of $15.9 million.

Both parties also called experts to testify regarding damages.[7]  Revoli retained David Ponte, a construction claims consultant, to review and validate the veracity of Revoli's cost estimate on the project.  Ponte testified that Revoli's cost estimate was reasonable, and that his independent cost estimate was around $12.3 million -- or about $1 million more than Revoli's cost estimate.  The city's expert, William McConnell, testified that a reasonable estimate of Revoli's anticipated profit on the project was $344,000.  Notably, McConnell's cost estimate also included an additional $600,000 in field supervision costs.

---

[7] To the extent that the city argues Revoli needed to call an expert to testify regarding its anticipated profits, the city's argument is misplaced.  See Spinosa, 98 Mass. App. Ct. at 11 (opinion testimony of small business owner regarding company's value was admissible where owner was sufficiently aware of business's contracts and liabilities).

Considered in its totality, and with regard for the highly deferential standard of review, we conclude that this evidence was sufficient to allow the jury "to arrive at a reasonably approximate estimate of damages." Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 68 Mass. App. Ct. 582, 609 (2007). While the jury did not entirely agree with either Revoli's profit figure of $4.6 million or the city's profit figure of $344,000, the testimony of Alsarabi, Ponte, and McConnell provided an "adequate factual basis to support" the jury's award of $3 million in net profit. Spinosa, 98 Mass. App. Ct. at 11. Thus, the jury's award of $3 million in lost profit was not "clearly excessive in relation to what [Revoli's] evidence ha[d] demonstrated damages to be" (citation omitted). Spinosa, supra at 10.

Judgment affirmed.

By the Court (Blake, C.J., Henry & Hershfang, JJ.[8]),

Paul Little

Clerk

Entered: May 8, 2026.

---

[8] The panelists are listed in order of seniority.

12